UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

HENRY A. KALAKAUSKIS,            )
                                 )
            Plaintiff,           )
                                 )
v.                               )        No. 3:15-CV-380-HBG
                                 )
CAROLYN W. COLVIN,               )
Acting Commissioner of Social Security, )
                                 )
            Defendant.           )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the consent of the parties [Doc. 17]. Now before the Court

is the Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 12

& 13] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs.

15 & 16]. Henry A. Kalakauskis ("the Plaintiff") seeks judicial review of the decision of the

Administrative Law Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin,

Acting Commissioner of Social Security ("the Commissioner").

On August 27, 2013, the Plaintiff filed an application for disability insurance benefits

("DIB"), claiming a period of disability which began July 16, 2012. [Tr. 150]. After his

application was denied initially and upon reconsideration, the Plaintiff requested a hearing. [Tr.

111-12]. On January 28, 2015, a hearing was held before an ALJ to review determination of the

Plaintiff's claim. [Tr. 34-72]. On May 1, 2015, the ALJ found that the Plaintiff was not

disabled. [Tr. 12-34]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-6];

thus, the decision of the ALJ became the final decision of the Commissioner.

Having exhausted his administrative remedies, the Plaintiff filed a Complaint with this Court on August 27, 2015, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

I.      **ALJ FINDINGS**

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.
>
> 2. The claimant has not engaged in substantial gainful activity since July 16, 2012, the alleged onset date (20 CFR 404.1527 et seq.).
>
> 3. The claimant has the following severe impairments: redundant loop of the cervical spine causing stenosis; traumatic brain injury with cognitive dysfunction; anxiety; obesity and sleep apnea (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. With normal breaks in an eight-hour day, he can sit for six hours, and stand and/or walk for six hours; can occasionally perform overhead reaching with the bilateral upper extremities and frequent, but not constant, fine and gross manipulations with the bilateral upper extremities. He could perform occasional climbing of ramps and stairs, stooping, kneeling, balancing, crawling and crouching, but never climbing ladders, ropes or scaffolds. He should avoid bright sunlight and concentrated exposure to hazards, such as unprotected heights and machinery. He would be limited to simple, routine, repetitive tasks, in that he could apply common

2

sense understanding to carry out oral, written and diagrammatic instructions, in a low stress job, with few changes in the work place and no assembly line type of work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on October 15, 1968 and was 43 years old which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 16, 2012, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 17-27].

## II.     DISABILITY ELIGIBILITY

This case involves an application for DIB. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

3

or which has lasted or can be expected to last for a continuous period of not less than twelve months." § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); see 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).  The claimant bears the burden of proof at the first four steps.  Id.  The burden shifts to the Commissioner at step five.  Id.  At the fifth step, the Commissioner must prove that there

4

is work available in the national economy that the claimant could perform.  Her v. Comm'r of

Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146

(1987)).


III.     STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled

pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the

correct legal standards and whether the findings of the ALJ are supported by substantial

evidence."  Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v.

Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).  If the ALJ applied the correct legal standards and

his findings are supported by substantial evidence in the record, his decision is conclusive and

must be affirmed.  42 U.S.C. § 405(g); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th

Cir. 2004).    Substantial evidence is "more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir.

1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981))

(internal citations omitted).

It is immaterial whether the record may also possess substantial evidence to support a

different conclusion from that reached by the ALJ, or whether the reviewing judge may have

decided the case differently.  Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4

(6th Cir. 1986).  The substantial evidence standard is intended to create a "'zone of choice'

within which the Commissioner can act, without the fear of court interference."  Buxton v.

Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.

5

1986)).  Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).


IV.      POSITIONS OF THE PARTIES

The Plaintiff sets forth four allegations of error committed by the ALJ.  First, the Plaintiff argues that the ALJ failed to properly weigh the opinion of treating physician Ted Stallings, M.D.  [Doc. 13 at 12].  Second, the Plaintiff contends that the ALJ failed to properly weigh and consider certain opinion evidence from the U.S. Department of Veterans Affairs ("VA"), including a finding by the VA that the Plaintiff was 100% disabled and findings made by Linley S. Ebeling, Ph.D., who performed a neuropsychological evaluation on the Plaintiff. [Id. at 12-13].  Additionally, the Plaintiff maintains that the ALJ erred in concluding that his subjective allegations were not entirely credible.  [Id. at 17-18].  Finally, the Plaintiff asserts that the ALJ's step five determination, that other work exists in the national economy that the Plaintiff can perform, is not supported by substantial evidence, because the hypothetical

6

questions posed to the vocational expert ("VE") during the administrative hearing did not include all of the functional limitations the ALJ assessed in his residual functional capacity ("RFC") determination, nor did the questions include certain limitations that the Plaintiff alleges he experienced. [Id. at 11-12].

The Commissioner responds that substantial evidence supports the ALJ's decision. Specifically, the Commissioner asserts that the ALJ properly consider the opinion evidence of record, including Dr. Stallings' opinion, which the Commissioner maintains "good reasons" were given by the ALJ in declining to afford the opinion controlling weight, and the VA's disability rating, which the Commissioner asserts is neither controlling in Social Security cases generally or in this specific case because, as observed by the ALJ, the rating was based on findings of impairments that were either correctable with treatment or which were past impairments the Plaintiff experienced. [Doc. 16 at 10-12]. Moreover, the Commissioner argues that the ALJ's credibility findings were properly assessed in accordance with agency regulations and that the Plaintiff fails to assert a direct challenge as to any of the findings made by the ALJ in this regard. [Id. at 5-17]. Lastly, the Commissioner contends that the ALJ's step five finding is supported by substantial evidence, because the ALJ only included those impairments he found credible when he questioned the VE during the administrative hearing. [Id. at 13-14].

V.     **ANALYSIS**

The Court will address the Plaintiff's allegations of error in turn.

A.     **Treating Physician Ted Stallings, M.D.**

The Plaintiff, who is a military veteran, established care with Dr. Stallings on July 26, 2013, after having received years of medical care primarily through the military. [Doc. 791-94].

7

Treatment notes from the Plaintiff's initial appointment with Dr. Stallings detail a number of active medical conditions the Plaintiff experienced, most of which were service related injuries. [Tr. 791-92]. Specifically, the Plaintiff experienced bilateral shoulder pain, which he was being assessed by another physician; neck pain, back pain, and numbness in his upper and lower extremities, which was similarly being addressed by a neck and back specialist; headaches associated with post-concussion syndrome due to multiple head trauma; abdominal pain; epigastric discomfort with symptoms of reflux; arthritis; carpal tunnel syndrome; dry eye syndrome; hemorrhoids; insomnia; and morbid obesity. [Id.].

For purposes of the Plaintiff's initial appointment with Dr. Stallings on July 26, 2013, the Plaintiff was only evaluated with regard to headaches, shoulder pain, abdominal pain, and gastroesophageal reflux disease. [Tr. 791]. Examination of the Plaintiff revealed largely normal and unremarkable findings. [Tr. 792-93]. Dr. Stallings assessed chronic reflux esophagitis, joint pain located in the shoulders, migraine headaches, and abdominal pain. [Tr. 793]. An ultrasound of the abdomen was ordered and medication was prescribed for the Plaintiff's remaining ailments. [Id.].

The Plaintiff returned to see Dr. Stallings on August 29, 2013, and complained of continued discomfort in his abdomen. [Tr. 787-88]. Ultrasound results revealed that the Plaintiff had "a nonmobile 1.2 cm gallstone at the gallbladder neck." [Tr. 789]. Dr. Stallings referred the Plaintiff to a gastroenterologist for evaluation and treatment consultation. [Tr. 788].

On January 29, 2014, Dr. Stallings issued a letter that opined on the Plaintiff's functional limitations. [Tr. 1226]. Dr. Stallings summarized the Plaintiff's numerous aliments, which in addition to the ones noted above, included tinnitus, anxiety, cognitive disability, photophobia, sleep apnea, and degenerative bone disease in the feet and toes. [Id.]. In regard to the Plaintiff's

8

back and shoulder pain, Dr. Stallings explained that the Plaintiff experienced cervical stenosis with bilateral radiculopathy, mid-thoracic back pain, lumbar back pain with bilateral sciatic and degenerative disc disease, and shoulder impairments, which included bilateral torn labrum, rotator cuff tears, and bone spurs. [Id.]. Dr. Stallings further noted that the VA had issued a 100% disability rating. [Id.]. Dr. Stallings then opined that the Plaintiff could lift, run, sit, and walk for up to 20 minutes, stand for up to 30 minutes, and could not twist, bend, kneel, crawl, or jump. [Id.]. In addition, Dr. Stallings noted that the Plaintiff took hydrocodone four times a day which prohibited work in a nuclear facility (the Plaintiff's prior place of employment), that he could only work day shifts due to his sleep apnea, and that he had to wear sunglasses during the day due to photophobia. [Id.].

Following the January 2014 opinion letter, the Plaintiff was seen by Dr. Stallings three additional times. On July 22, 2014, the Plaintiff presented with a possible umbilical hernia and pain under his left breast, and on December 9, 2014, the Plaintiff complained of shoulder pain, headaches, and joint pain. [Tr. 1234, 1242]. Examination findings for both appointments, however, remained normal and unchanged. [Id.]. The last appointment of record was January 26, 2015, at which time the Plaintiff had recently been discharged from the military and needed a letter from Dr. Stallings "reflecting this for his work at TVA." [Tr. 1227].

In the disability determination, after summarizing the foregoing treatment notes[1] [Tr. 21-23], the ALJ discussed Dr. Stallings's opinion and assigned "little evidentiary weight" to the findings made therein for several reasons. [Tr. 24]. First, the ALJ observed that the functional

---

[1] In addition to the treatment notes discussed by the Court, the ALJ also discussed a sleep consultation that was purportedly performed by Dr. Stallings on October 21, 2013. [Tr. 22]. The sleep consultation, however, was actually performed by Andrews Paul, M.D., at Summit Sleep Services, which appears to be a separate practice within the same medical group as Dr. Stallings. [Tr. 1214-17]. Dr. Paul assessed the Plaintiff with moderately severe sleep apnea "based on report" as the results from the sleep tests were still pending. [Tr. 1216].

9

limitations assessed were unsupported by the objective medical evidence of record. [Id.]. Second, the ALJ noted that Dr. Stallings' treatment notes failed to document "the type of significant clinical and laboratory abnormalities one would expect if the claimant were so limited, and the doctor does not specifically address this weakness in his report." [Tr. 24-25]. In addition, the ALJ remarked that the Plaintiff was infrequently seen by Dr. Stallings. [Tr. 25]. Finally, the ALJ found that Dr. Stallings' opinion appeared to rely, at least in part, on the assessment of impairments for which he did not personally render treatment for. [Id.].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R.§ 404.1527(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. Id.

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. Id. A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). Nonetheless, the ultimate decision of disability rests with

the ALJ. See King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984); Sullenger v. Comm'r of Soc. Sec., 255 Fed. App'x 988, 992 (6th Cir. 2007).

The Plaintiff maintains that the ALJ failed to properly weigh Dr. Stallings' opinion, arguing that "there is no evidence, much less substantial evidence, in the record to contradict Dr. Stallings' opinion." [Doc. 13 at 13]. The Court finds the record indeed contains evidence that reasonably calls into questions the credibility of the limitations opined by Dr. Stallings. For instance, the remaining opinion evidence of record assessed less restrictive limitations, including the opinion of consultative examiner Jeffrey Uzzle, M.D., who assessed that the Plaintiff retained the ability to perform a reduced range of medium work [Tr. 986-92], non-examining state agency physician Thomas Thrush, M.D., who likewise opined that the Plaintiff retained the ability to perform a reduced range of medium work [Tr. 79-81], and non-examining state agency physician James Gregory M.D., who opined limitations consistent with a reduced range of light work. [Tr. 93-95]. In addition, the ALJ's lengthy discussion of the Plaintiff's extensive medical history [Tr. 19-23], which included numerous imaging studies and treatment notes from a variety of medical providers, offers conflicting evidence. The ALJ observed that a physical assessment performed in October 2012, three months after the Plaintiff's alleged onset date, revealed mostly normal findings. [Tr. 21, 1104-05]. Although a CT scan of the Plaintiff's neck revealed "redundant loop of cervical vertebral arteries extending into both neural foramen at C3-C4 contributing to a neural foraminal stenosis," two separate neurosurgical consultants advised that surgical intervention was not warranted and instead the Plaintiff was treated with Celebrex for headache management, which was found to be helpful in managing the Plaintiff's pain. [Tr. 21, 512, 517]. VA treatment notes document that by May 2013, the Plaintiff was neurologically stable and his headaches were under "good control." [Tr. 21, 636]. Moreover, the Plaintiff reported in

11

September 2013 that his right shoulder pain was a "0" despite an MRI from the month before revealing some significant tendinopathy of the cuff and a possible partial thickness tear with some subacromial bursitis and a SLAP tear. [Tr. 21-22, 801]. Paul Brady, M.D., subsequently performed right shoulder surgery on the Plaintiff, and during follow-up appointments in August 2013, September 2013 and January 2014, the Plaintiff reported improvement and that he was doing well. [Tr. 22, 967, 976, 1021]. Although Dr. Brady recommended left shoulder surgery as well, the military had not yet approved the surgery. [Tr. 22, 1021]. Finally, as to the Plaintiff's abdominal pain for which the Plaintiff was evaluated by William Gibson, M.D., following Dr. Stallings' referral, the Plaintiff's gallbladder symptoms were found to fall outside "the category of classic biliary colic." [Tr. 22, 779]. While the Plaintiff nonetheless desired to have surgery, the military declined authorization for the procedure. [Tr. 22, 782].

While the forgoing evidence only provides a snippet of the medical documentation in this case, as well as the ALJ's discussion of the evidence, it demonstrates that the record in fact contains evidence that created a "zone of choices" of which the ALJ could draw upon in assessing less than controlling weight to Dr. Stallings' opinion.

The Plaintiff argues that two of the cited reasons for declining to adopt Dr. Stallings' opinion – that it was unsupported by objective medical evidence and also unsupported by the physician's own treatment records – fails to amount to "good reasons" for rejecting the opinion. [Doc. 13 at 13-14]. The Plaintiff's position in both regards, however, is directly at odds with well-establish caselaw in this circuit. See Garner v. Heckler, 745 F.2d 383, 391 (6th Cir. 1984) ("The Secretary is not bound by a broad conclusory statement of a treating physician in making [a disability] determination."); Houston v. Sec'y of Health & Human Servs., 736 F.2d 365, 367 (6th Cir. 1984) ("Ultimately, the determination of disability is the prerogative of the Secretary,

12

not the treating physician, and the brief conclusory letter from appellant's treating physician, was not dispositive of the issue."); Adams v. Massanari, 55 F. App'x 279, 284 (6th Cir. 2003) ("[T]he medical opinions and diagnoses of claimant's treating physicians are entitled to great weight, so long as they are supported by objective medical evidence."); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given such deference when supported by objective medical evidence."); Thornton v. Colvin, No. 3:13-CV-354-TAV-CCS, 2014 WL 3866151, at *8 (E.D. Tenn. Aug. 6, 2014) ("There must be a supportable basis for arriving at the conclusion adopted by Dr. Brown if her opinion is to be given controlling weight.").

"Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." 20 C.F.R. § 404.1529(c)(2). Furthermore, the treating physician rule directs that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion," and that "[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion." § 404.1527(c)(3). Here, Dr. Stallings' opinion fails to offer any explanation for the limitations assessed. Moreover, a review of his treatment notes, which consist of two appointments leading up to the issuance of his opinion, fail to offer any insight into the conclusions reached. As noted above, the Plaintiff's initial examination findings were normal, and the second appointment did not even address the impairments for which the Plaintiff alleges are disabling. Moreover, the third appointment of record, which was seven months after Dr. Stallings penned his opinion, fails to provide any further support or explanation for the limitations opined.

13

Further, the Court finds that the ALJ gave additional "good reasons" for declining to grant the opinion controlling weight. Namely, the ALJ properly considered the infrequent nature in which the Plaintiff was seen by Dr. Stallings. The regulations recognize that "the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(c)(2)(i). As already discussed, Dr. Stallings saw the Plaintiff a total of two times prior to issuing his opinion. Moreover, the Court observes that five months had elapsed between the Plaintiff's second appointment and the time Dr. Stallings wrote his opinion letter. The regulations further recognize that the nature and extent of the treating relationship is as a relevant factor to be taken into consideration. Specifically, "the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion." Id. at § 404.1527(c)(2)(ii). This factor includes looking "at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories." Id. In this case, Dr. Stallings only provided an initial evaluation of the Plaintiff's shoulders, headaches, abdominal pain, and gastroesophageal reflux disease on July 26, 2013, which revealed mostly normal examination findings. The Plaintiff's follow-up appointment on August 29, 2013, was primarily to address ultrasound results and a referral to a gastroenterologist. Therefore, the extent of examination and testing performed or ordered by Dr. Stallings was minimal and certainly did not include treatment for all the impairments mentioned in Dr. Stallings' opinion letter. Accordingly, the Court finds that the ALJ reasonably concluded that Dr. Stallings' opinion relied, at least in part, on the assessment of impairments for which he did not render treatment for.

Based upon the foregoing, the Court finds that substantial evidence supports the ALJ's

14

decision to assign little weigh to Dr. Stallings opinion, and that the ALJ gave "good reasons," pursuant to 20 C.F.R. § 404.1527(c), for the weight assigned. Thus, the Plaintiff's allegation of error in this regard is without merit.

### B.   VA Disability Determination

The Plaintiff argues that the ALJ failed to apply the correct legal standard for weighing the VA's disability determination which found the Plaintiff to be 100% disabled. [Doc. 13 at 15].

While evidence of an impairment may include "[d]ecisions by any governmental or nongovernmental agency about whether [an individual is] disabled," 20 C.F.R. § 404.1512(b)(1)(v), these decisions are not determinative of disability under the Social Security Act, id. at § 404.1504. This is because another agency's decision is based on that agency's own rules, whereas disability claims filed pursuant to the Social Security Act is assessed by social security law.   Id.; see Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006) ("[B]ecause other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency.").   Nonetheless, "[e]vidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6.

With regard to the disability determinations rendered by the VA, and as properly observed by the Plaintiff [Doc. 13 at 15], the Sixth Circuit has "not specified the weight such a determination should carry when determining social security disability eligibility." Ritchie v. Comm'r of Soc. Sec., 540 F. App'x. 508, 510 (6th Cir. 2013) (citing Stewart v. Heckler, 730

15

F.2d 1065 (6th Cir. 1984)). In the absence of controlling case law establishing how much weight VA disability determinations should be given, the Plaintiff urges this Court to adopt the holding in <u>King v. Comm'r Soc. Sec.</u>, 779 F. Supp. 2d 721 (E.D. Mich. 2011) which, according to the Plaintiff, "stands for the position that the Commissioner must give at least 'some weight' to findings of disability by the Veterans' Administration." [Doc. 13 at 16].

As an initial matter, the Court finds that the Plaintiff's interpretation of <u>King</u> is incorrect. In that case, the court observed that while the Sixth Circuit has not specified the evidentiary value the Commissioner must give VA disability determinations, decisions from other circuits, including the Third, Fourth, and Eleventh Circuit Courts, have assigned evidentiary weight ranging from "substantial weight," to "great weight," to "some weight." 779 F. Supp. 2d at 726 (citations omitted). The <u>King</u> court specifically declined, however, to side with any of these circuits' interpretation on the matter and, instead, found "that the better approach" was to weigh the VA's decision on a case-by-case basis: "the relative weight to be given this type of evidence will vary depending upon the factual circumstances of each case." <u>Id.</u> (quoting with approval <u>Chambliss v. Massanari</u>, 269 F.3d 520, 522 (5th Cir. 2001)). The court concluded that this "reasoning closely approximates the Sixth Circuit's general rule as to the manner ALJs must consider the evidence presented to them." <u>Id.</u>

This Court agrees with <u>King</u> and finds that the appropriate evidentiary weight will depend upon the specific facts of each case. The Court finds that this standard indeed approximates with the Sixth Circuit's general rule for weighing evidence. <u>See Hurst v. Sec'y of Health & Human Servs.</u>, 753 F.2d 517, 519 (6th Cir. 1985) ("In the absence of an explicit and reasoned rejection of an entire line of evidence, the remaining evidence is 'substantial' only when considered in isolation. It is more than merely 'helpful' for the ALJ to articulate reasons ...

16

for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review.") (quoting Zblewski v. Schweiker, 732 F.2d 75, 78 (7th Cir.1984)). Further, it is consistent with our appellate court's observation that a "disability rating by the Veterans Administration is only one factor to be considered in making a social security disability finding," Ritchie, 540 F. App'x at 511, and that "[r]egardless of the weight afforded, an ALJ 'should explain the consideration given to these decisions in the notice of decision.'" LaRiccia v. Comm'r of Soc. Sec., 549 F. App'x 377, 388 (6th Cir. Dec. 13, 2013) (quoting Soc. Sec. Rul. 06–03p 2006 WL 2329939, at *6). For these same reasons, this Court has previously declined to place a specific evidentiary value on disability decisions rendered by the VA. See Golden v. Colvin, No. 3:14-CV-492-PLR-HBG, 2015 WL 8917876, at *5 (E.D. Tenn. Nov. 23, 2015) (observing that the Sixth Circuit has recognized a claimant's disability rating from the VA as only one factor among the evidence that must be considered and holding that "as long as the ALJ considers the disability rating and explains her consideration of the rating, the ALJ has fulfilled her duty") adopted by No. 3:14-CV-492-PLR-HBG, 2015 WL 8967978, at *1 (E.D. Tenn. Dec. 15, 2015); see also Lawson v. Colvin, No. 3:15-CV-119-PLR-CCS, 2015 WL 9942593, at *5 (E.D. Tenn. Dec. 30, 2015) (J. Shirley) (holding same) adopted by No. 3:15-CV-119-PLR-CCS, 2016 WL 347679, at *1 (E.D. Tenn. Jan. 28, 2016).

In this case, the Court finds that the ALJ properly considered the Plaintiff's 100% disability rating. In considering the disability rating, the ALJ stated, "To the extent the VA's rating decision was based upon the same medical evidence before the undersigned, it has been considered as outlined herein. The undersigned accords the VA rating decision little weight." [Tr. 24]. The ALJ then explained that the rating is based upon the mere diagnosis and treatment of the Plaintiff's impairments, rather than the functional impact caused by his impairments. [Id.].

The ALJ elaborated on this point by explaining, for example, that the Plaintiff received a disability rating of 50% for sleep apnea due to his need to use a continuous positive airway pressure ("CPAP") machine. [Id.]. The ALJ observed, however, that the Plaintiff reported that the use of the CPAP machine was effective, "so his function would be presumed to be better." [Id.]. Similarly, while the Plaintiff received multiple disability ratings for knee strains and ankle sprains [Tr. 281-83], the ALJ found that "the record is devoid of such diagnostic testing." [Tr. 24].

The Court finds that the ALJ gave appropriate reasons for declining to give greater deference to the VA's disability rating. The Court has reviewed in full the VA's decision and explanation for each individual impairment rating, which collective makes up the Plaintiff's 100% disability rating. [Tr. 271-301]. As recognized by the ALJ, the explanation for each individual impairment rating is generally based upon the Plaintiff's diagnosis of the impairment, rather than the functional effects caused by the impairment. [See Tr. 275-30]. In an effort to carefully scrutinize the ALJ's determination in this regard, the Court attempted to review the medical evidence relied on by the VA in making its decision for each individual impairment rating. [See Tr. 274-75]. However, the Court was unable to locate a majority of the specific medical evidence referenced in the VA's decision despite a plethora of medical records contained in this case. Therefore, given the ALJ's discussion of the evidence in this case and the specific reasons cited for declining to give greater weight to the VA's decision, the Court finds that the ALJ did not err in weighing the Plaintiff's 100% disability rating.

The Plaintiff attempts to argue that the ALJ failed to consider the combined percentages of each individual rating which exceed 300%. [Doc. 13 at 16]. The ALJ, however, considered the "VA's ratings" in finding that the VA's decision as a whole was based upon the diagnoses

18

and treatment of the alleged impairments, rather than the functional effect they caused. [Tr. 24] (emphasis added). Moreover, the Court notes that "[t]he VA rating reflects the cumulative effect of all of [a claimant's] impairments," LaRiccia, 549 F. App'x at 388, which in this case is 100%. Therefore, the fact that the Plaintiff's individual ratings exceed 300% when combined does not lend anything to the analysis. The Plaintiff also submits that the ALJ ignored the findings made by Lynley S. Ebeling, Ph.D., a VA psychologist, who opined on the Plaintiff's cognitive work related limitations and restrictions. [Doc. 13 at 16]. Contrary to the Plaintiff's assertion, the ALJ addressed Dr. Ebeling's opinion [Tr. 23] and even assigned it "great weight" [Tr. 25].

Therefore, the Court finds the Plaintiff's arguments in this regard to be unpersuasive.


### C. Credibility Determination

The Plaintiff also contends that his subjective allegations were not properly considered by the ALJ, and that he is not required to establish the severity of his disabling pain by objective evidence alone. [Doc. 13 at 17].

"In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant." Walters, 127 F.3d at 531. Because a claimant's statements as to "pain or other symptoms will not alone establish the [the claimant] is disabled," 20 C.F.R. § 404.1529(a), the Sixth Circuit has articulated the standard for evaluating subjective complaints as follows:

> First, we examine whether there is objective medical evidence in an underlying medical condition. If there is, we then examine (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Sec. of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986). In regard to this

second prong, "adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

In deciding whether the objective evidence confirms the severity of the alleged pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain, the ALJ must consider the following factors: (i) daily activities; (ii) the location, frequency, and intensity of the pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, received or have received for relief of pain or other symptoms; (vi) any measures that are used or were used to relieve pain or other symptoms; (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

The Court finds that the ALJ properly discounted the Plaintiff's subjective allegations by finding them "less than fully credible" based upon the Plaintiff's reported activities. Specifically, the ALJ observed that the Plaintiff's activities appeared inconsistent with his complaints of disabling physical and mental conditions. [Tr. 24]. In July 2012, the Plaintiff reported to an occupational therapist that his leisure activities included "hunting, shooting, archery, fishing, rock climbing, skydiving, scuba." [Tr. 24, 374]. During a follow-up appointment two months later, the Plaintiff relayed that he had spent the weekend in North Carolina gold dredging underwater. [Tr. 24, 340]. Soon thereafter, the Plaintiff stated that he expected to return to his civilian job, which was a fireman at a nuclear power plant. [Tr. 24, 583]. In July 2013, he similarly reported to Dr. Ebeling that his hobbies included hunting,

20

shooting sports, fishing, martial arts, survivalist, spear fishing, skydiving, and rock climbing. [Tr. 24, 769]. More recently in January 2015, treatment notes from Compressive Pain Specialists document that the Plaintiff was employed full-time. [Tr. 24, 1193]. Finally, the Plaintiff testified during the administrative hearing that he still drives and continues to hunt. [Tr. 24, 43-44]. Based upon these observations made by the ALJ, the Court finds that the Plaintiff's reported activities provide a reasonable basis to discount the Plaintiff's credibility. See 20 C.F.R. § 404.1529(c)(3) (listing daily activities as an appropriate factor to be considered in assessing a claimant's subjective complaints of pain); Walters, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.").

The Court observes that the Plaintiff does not identify any specific allegation of error committed by the ALJ in assessing his credibility. Rather, the Plaintiff provides a general argument that the evidence in the record demonstrates that the Plaintiff is disabled. [Doc. 13 at 17]. The Plaintiff fails, however, to cite which evidence within the 1,248 page record contradicts the ALJ's finding. Because the ALJ's findings on credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility," Walters, 127 F.3d at 531, the Court declines to disturb this highly deferential standard, particularly in light of the Plaintiff's failure to identify a specific violation of agency rules and regulations committed by the ALJ.

Consequently, the Court finds no error on the ALJ's part in assessing the Plaintiff's credibility.

### D. Vocational Expert Testimony

Finally, the Plaintiff submits that substantial evidence does not support the ALJ's finding at step five in which the ALJ found that other work exists in the national economy that the Plaintiff is capable of performing. [Doc. 13 at 11].

At step five, the Commissioner has the burden of proving that other work exists in the national economy that the claimant can perform given the claimant's RFC and vocational factors, including age, education, and work skills. Walters, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520). In many cases, the Commissioner may meet her burden by applying the applicable Medical-Vocational Guideline rule, which based upon the claimant's age, education, and whether she has transferable job skills, will indicate a finding of "disabled" or "not disabled." Id. (citing Wright v. Massanari, 321 F.3d 611, 615 (6th Cir. 2003); Burton v. Sec'y of Health & Human Servs., 893 F.2d 821, 822 (6th Cir. 1990). Essentially, the grids allow an ALJ to take administrative notice that jobs are available in the national economy in which a claimant is capable of performing without having to consult additional evidence. See Kirk, 667 F.2d at 529. However, if a claimant suffers from non-exertional limitations or cannot perform substantially all of the exertional demands of a job at a given exertional level, as is the case here [Tr. 26-27], the grids only provide a framework for the Commissioner's decision, and the Commissioner must utilize other evidence, such as testimony from a vocational expert, to determine whether work exists in the nationally economy the claimant can perform. Walters, 127 F.3d at 529 (citing Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 537-38 (6th Cir. 2001); Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 150 (6th Cir. 1996)).

The Plaintiff submits that the hypothetical questions posed to the VE were flawed because the questions did not include all of the limitations that make up the Plaintiff's RFC, nor

did the questions include additional restrictions which the Plaintiff argues were "uncontradicted limitations." [Doc. 13 at 11]. The Court is not persuaded. During the administrative hearing, the ALJ posed two hypothetical questions to the VE which included the exact limitations that make up the Plaintiff's RFC. [Compare Tr. 19 with Tr. 66-68]. The Plaintiff does not identify any specific limitation that was included in his RFC that was not included in the hypothetical questions presented to the VE. Moreover, the Court, in carefully comparing the Plaintiff's RFC and the hearing transcript, has found no discrepancy.

Based upon all of the Plaintiff's work related limitations, the VE opined that other work exists in the national economy that the Plaintiff can perform including, hand packer, production laborer, and cashier. [Tr. 27, 67-68]. The VE also identified the specific job code number for each position within the Dictionary of Occupational Titles ("DOT"), the number of positions that existed nationally for each job, and confirmed that her testimony was consistent with the DOT. [Tr. 67-69]. Because the hypothetical questions adequately represented all of the Plaintiff's limitations, the VE's testimony provided substantial evidence at step five that a significant number of jobs existed within the national economy that the Plaintiff could perform. See Smith v. Halter, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.").

The Plaintiff further argues that the hypothetical questions were flawed because they did not include "the effect of the Plaintiff's headaches" or the limitation that the Plaintiff could only occasionally reach, including overhead, with his upper extremities as opined by consultative examiner Jeffery Uzzle, M.D., and non-examining state agency physician James Gregory, M.D.

23

As to "the effect of the Plaintiff's headaches," it is unclear what limitation or work-related restriction the Plaintiff is referring to in this instance. To the extent that the Plaintiff argues that the VE should have been informed that the Plaintiff suffers from headaches, "a hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." Webb v. Comm'r of Soc. Sec., 368 F.3d 629, 633 (6th Cir. 2004) (citation omitted). With regard to the Plaintiff's alleged reaching limitations, the ALJ need only incorporate into a hypothetical question the limitations he finds credible. Parks v. Soc. Sec. Admin., 413 F. App'x 856, 865 (6th Cir. 2011). Because the ALJ assigned "little weight" to Dr. Uzzle's opinion and only "some weight" to Dr. Gregory's opinion, the ALJ was not obligated to include all the limitations either doctor opined into the hypothetical questions. The Court observes, however, that the Plaintiff's RFC includes the restriction of only occasional overhead reaching with his upper extremities. [Tr. 19].

The Court also finds no merit in the Plaintiff's contention that his restriction against "no assembly line type of work" eliminated all of the jobs identified by the VE. [Doc. 13 at 12]. During the hearing, the VE was asked to consider two separate hypothetical questions. As to the first hypothetical, the ALJ asked the VE to assume all of the limitations included in the Plaintiff's RFC, see supra pp. 2-3, with the exception of the last portion of the RFC determination – the need to work a low stress job, with few changes in the workplace, and *no assembly line type work*. [Tr. 66-67]. In response to the ALJ's inquiry whether jobs existed for a hypothetical individual with said limitations, the VE responded that light, unskilled jobs existed including hand packer, production laborer, and production inspector. [Tr. 67-68]. For the second hypothetical, the ALJ asked the VE to assume all of the same limitations as before but added that the hypothetical individual would also be limited to a low stress job, with few changes

24

in the workplace, and *no assembly line type of work*.  [Tr. 68].  The ALJ then asked whether these additional limitations would preclude the hypothetical individual from working any of the three jobs previously identified by the VE.  [Id.].  The VE responded, "I'm not sure about the production inspector.  I believe that would be eliminated at that point."  [Id.].  The VE then identified cashier as an additional, alternative job.  [Id.].

The Plaintiff argues that the VE's response to the second hypothetical, which eliminated production inspector as a viable job, automatically eliminated the jobs of hand packer and production laborer as well because those two jobs are "obviously assembly line work."  [Doc. 12 at 13].  The Court disagrees as there is nothing within the VE's testimony to suggest that the jobs of hand packer and production laborer were eliminated.  First, the VE was asked whether any of the three jobs – production inspector, hand pack, and production laborer – could still be performed, and the VE only identified production inspector as being incompatible with the additional limitations.  Second, there is nothing within the VE's testimony to suggest that the restriction against "no assembly type work" was the specific limitation that eliminated the production inspector job as the VE was also asked to consider the need for a low stress job that involved few changes.  Even assuming that the VE eliminated the production inspector job due to the "no assembly type work" restriction, the ALJ may nonetheless rely on VE testimony in complex cases where there is an apparent conflict, "given the VE's ability to tailor her finding to an 'individual's particular residual functional capacity.'"  Beinlich v. Comm'r of Soc. Sec., 345 F. App'x 163, 168–69 (6th Cir. 2009) (quoting Wright v. Massanari, 321 F.3d 611, 616 (6th Cir. 2003)); see Soc. Sec. Rul. 00–4p, 2000 WL 1898704, at *3 (Dec. 4, 2000) ("The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings.  A VE . . . may be able to provide more

specific information about jobs or occupations than the DOT.").

Therefore, the Court finds that the VE's testimony provided substantial evidence in which the ALJ could properly rely on at step five to demonstrate that a significant number of jobs existed within the national economy that the Plaintiff can perform. The Plaintiff's arguments to the contrary are not well-taken.

## VI.    CONCLUSION

Based upon the foregoing, the Plaintiff's Motion for Judgment on the Pleadings [**Doc. 13**] is **DENIED**, and the Defendant's Motion for Summary Judgment [**Doc. 15**] is **GRANTED**. The Clerk of Court will be directed to close this case.

Order Accordingly,

United States Magistrate Judge